**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, An Ohio Corporation; and HARLEYSVILLE WORCESTER INSURANCE COMPANY, an Ohio Corporation, | ) ) ) ) ) | |
| | ) | Case No. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FOUR SEASONS HEATING & AIR CONDITIONING INC., an Illinois Corporation; and KEVIN TRUSS, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, HARLEYSVILLE PREFERRED INSURANCE COMPANY, An Ohio

Corporation; and HARLEYSVILLE WORCESTER INSURANCE COMPANY, an Ohio

Corporation, by and through its attorneys, MEAGHER & GEER, P.L.L.P., states the following as

its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57,

against Defendants, FOUR SEASONS HEATING & AIR CONDITIONING INC., an Illinois

Corporation; and KEVIN TRUSS:

### Introduction

1.      This is a Declaratory Judgment action to obtain a declaration of the rights and

obligations under a commercial general liability insurance policy, Certificate Number

MPA5387AP issued by Harleysville Preferred Insurance Company, and a commercial umbrella

insurance policy, Certificate Number CMB38473M issued by Harleysville Worcester Insurance

Company, both of which were issued to their named insured, Four Seasons Heating & Air

Conditioning, Inc. ("Four Seasons").  Plaintiffs seek a declaration from this Court regarding the

extent of the Plaintiffs' rights and obligations, if any, under the Policy for the allegations in the lawsuit entitled, *Kevin Truss, Individually and on Behalf of All Others Similarly Situated v. Four Seasons Heatign & Air Conditioning, Inc.*, Case No. 2019 CH 9633, filed in the Chancery Division of the Circuit Court of Cook County, State of Illinois (the "Underlying Complaint"). (A copy of the Underlying Complaint is attached as <u>Exhibit A</u>.)

2.      Plaintiffs seek a declaration from this Court that it owes no obligation under their respective policies to defend and/or to indemnify Four Seasons with regard to the allegations in the Complaint.

## Jurisdiction and Venue

3.      Plaintiff, Harleysville Preferred Insurance Company ("HPIC"), was an insurance company with its principal place of business in Columbus, Ohio and was authorized to issue policies of insurance in the state of Illinois.

4.      Plaintiff, Harleysville Worcester Insurance Company ("HWIC"), was an insurance company with its principal place of business in Columbus, Ohio and was authorized to issue policies of insurance in the state of Illinois.

5.      Defendant, Four Seasons Heating & Air Conditioning, Inc. ("Four Seasons"), is a corporation organized under the laws of Illinois with its principle place of business in Chicago, Illinois. Four Seasons is the named insured under the commercial general liability insurance policy issued by HPIC and the commercial umbrella policy issued by HWIC, which are at issue and further described in this Complaint.

6.      Defendant, Kevin Truss ("Truss"), is a resident of Illinois. Plaintiffs name Truss as a potentially interested party by virtue of his status as the named plaintiff and putative

class representative in the Underlying Complaint. No affirmative relief is sought against Truss.

7.     The violations of BIPA alleged in the Underlying Complaint all occurred at various unidentified locations within the State of Illinois.

8.     Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiffs, HPIC and HWIC, on the one hand, and Defendants, Four Seasons and Truss, on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying Four Seasons in the Underlying Lawsuit well exceeds $75,000.

9.     Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District, including where the HPIC and HWIC Policies were issued and delivered, where the statutory violations alleged in the Underlying Complaint occurred, and where the underlying lawsuit is pending.

10.     An actual justiciable controversy exists between HPIC and HWIC, on the one hand, and Four Seasons, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## The Underlying Putative Class Action Lawsuit

11.     Defendant Truss has brought a putative class action complaint directed against Four Seasons in the Chancery Division of the Circuit Court of Cook County, Illinois, which is entitled, *Kevin Truss, individually, and on behalf of all others similarly situated, v. Four Seasons*

*Heating & Air Conditioning, Inc.*, Case No. 2019 CH 9633 (the "Underlying Complaint"). (Exhibit A.)

12.     The Underlying Complaint contains three counts, which allege that Four Seasons violated the Illinois Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq.*] by engaging in the "unlawful collection, use, storage, and disclosure of Plaintiffs' sensitive and proprietary information"   (Exhibit A, ¶¶ 13-15, 33-47).

13.     Counts I through III of the Underlying Complaint seek statutory damages available under BIPA to Truss and each putative class member, of $1,000 per negligent violation, $5,000 per intentional or reckless violation.  (Exhibit A, ¶¶ 84, 94, 103, and Prayer for Relief).

14.     The Underlying Complaint seeks to certify a purported class of "all persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period." (Exhibit A, ¶ 71).  The putative class is alleged to include "in excess of forty (40) potential class members."  (Exhibit A, ¶ 72).

15.     The Underlying Complaint alleges that Four Seasons "has required or coerced employees to comply [with its biometric timekeeping policy] in order to receive a paycheck, after they have committed to the job."  (Exhibit A, ¶ 70).

16.     The Underlying Complaint alleges that Four Seasons "has violated and continues to violate BIPA because it did not and, upon information and belief, continues not to:

a.     Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their hand scan(s) were being collected, stored, and used, as required by BIPA;

b.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' hand scan(s), as required by BIPA;

     c.      Receive a written release from Plaintiffs and others similarly situated to collect, store, disseminate, or otherwise use their hand scan(s), as required by BIPA; and

     d.      Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric identifiers and/or biometric information to a third party as required by BIPA." (Exhibit A, ¶¶ 15, 77-83, 86-93, 96-102).

### The HPIC CGL Policy

17.     HPIC issued to Four Seasons Heating & Air Conditioning, Inc. ("Four Seasons") a Commercial General Liability Policy, No. MPA5387AP, effective October 1, 2018 through October 1, 2019, with limits of $1 million each occurrence, $1 million for personal and advertising injury, and $2 million in the general aggregate. (A copy of the HPIC Policy is attached hereto and made a part hereof as Exhibits "B").

18.     The HPIC Policy provides, in relevant part, as follows:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V. Definitions.

**SECTION I. COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

     a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit' seeking those damages. However, we will have no duty to

defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. EXCLUSIONS

This insurance does not apply to:

[. . .]

### e. Employer's Liability
"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

[. . .]

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

[. . .]

## COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY

## 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance

applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    (1)  The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

    (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

    **a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

[. . .]

**SECTION V – DEFINITIONS**

**1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.  Notices that are published include material placed on the Internet or on similar electronic means of communication;

        [. . . ]

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

[ . . . ]

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

[ . . . ]

**22.** "Your work":

a. Means:
(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

The following Endorsements were incorporated into and modified the Policy:

## RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[. . .]

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p.** Recording And Distribution Of Material Or Information In Violation Of Law "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[. . .]

(4) Any federal, state or local statute, ordinanceor regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

[. . .]

\* \* \* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I — Coverage A — Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – COVERAGE B – Personal and Advertising Injury Liability**:

**2. Exclusions**
This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

* * * * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

[. . .]

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

[. . .]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage B — Personal and Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

[. . .]

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

[. . .]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

(3)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**The HWIC Commercial Umbrella Liability Policy**

19.    HWIC issued to Four Seasons a Commercial Umbrella Liability Policy, No. CMB38473M, effective October 1, 2018 through October 1, 2019, with limits of $10 million each occurrence, $10 million for personal and advertising injury, and $10 million in the general aggregate.  (A copy of the HWIC commercial umbrella policy is attached hereto and made a part hereof as Exhibits "C").

20.    The HWIC Policy provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY UMBRELLA COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V — Definitions.

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At

our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

    (1) The amount we will pay for the "ultimate net loss" is limited as described in Section III — Limits Of Insurance; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1.a. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

[. . .]

### g.    Employer's Liability

"Bodily injury" to:

(1)    An "employee" of the insured arising out of and in the course of:

    (a)    Employment by the insured; or

    (b)    Performing duties related to the conduct of the insured's business; or

    [. . .]

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

[. . .]

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

### h.    Employment-Related Practices

"Bodily injury" to:

**(1)**    A person arising out of any:

    [. . .]

    **(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

  [. . .]

This exclusion applies whether the injury causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

        **(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section III — Limits Of Insurance; and

        **(2)** Our right and duty to defend end when wehave used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

    **a.** "Personal and advertising injury":

    [. . .]

        **(14) Employment-Related Practices**

        To:

        **(a)** A person arising out of any:

        [. . .]

            **(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    [. . .]

This exclusion applies whether the injury causing event described in Paragraphs **(i), (ii)** or **(iii)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

[. . .]

## SECTION V — DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication;

      [. . .]

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

   [. . .]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

       [. . .]

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

       [ . . . ]

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

       [. . .]

28. "Your work":

**a**. Means:
    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:
    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing or failure to provide warnings or instructions.

The following Endorsements were incorporated into and modified the HWIC Policy:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **u.** of Paragraph **2. Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **u.** **Recording And Distribution Of Material Or Information In Violation Of Law**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

        [. . .]

    (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **a.(17)** of Paragraph **2. Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

a. "Personal and advertising injury":

**(17) Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

[. . .]

(4) Any federal, state or local statute, ordinanceor regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

[. . .]

\* \* \* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Exclusion **2.t.** of **Section I — Coverage A — Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**t. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other

loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – COVERAGE B – Personal and Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\* \* \* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - PERSONAL DATA COMPROMISE AND NETWORK SECURITY LIABILITY - COVERAGE A

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA POLICY

The following exclusions are added under **Exclusions, 2. Applicable to Coverage A**:

**Under Coverage A, this insurance does not apply to:**

**Personal Data Compromise**

Any loss, theft, accidental release, accidental publication, disposal or abandonment of personally identifying information or personally sensitive information.

[. . .]

**All terms and conditions of this policy apply unless modified by this endorsement.**

### Four Seasons' Tender to Harleysville

20.     On or about August 26, 2019, Four Seasons tendered to HPIC and HWIC ("Harleysville") the defense and indemnity of Four Seasons in relation to the Underlying Complaint.

21.     On or about September 27, 2019, Harleysville notified Four Seasons that it had reviewed the applicable Policies and determined that there was no coverage for either defense or indemnity in connection with the Underlying Complaint.

### COUNT I – DECLARATORY JUDGMENT (Harleysville Preferred)

22.     Harleysville Preferred Insurance Company (HPIC) repeats and realleges the allegations in Paragraphs 1 through 21 as though fully set forth herein as paragraph 22.

23.     The HPIC Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time"   (Exhibit B).

24.     The HPIC Policy defines "personal and advertising injury", in relevant part, as an injury arising from an "oral or written publication, in any manner, of material that violates a person's right of privacy."   (Exhibit B).

25.     The endorsement titled "Recording and Distribution of Material in Violation of Law Exclusion" contained in the HPIC Policy, which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the [ ] dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information", precludes coverage for Four Seasons under the HPIC Policy's Coverages A and B

in connection with the Underlying Complaint because it arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information".  (Exhibits A and B).

26.     Additionally, and in the alternative, the endorsement titled "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception" that is contained in the HPIC Policy excludes coverage any bodily injury, property damage, or  personal and advertising injury that arises from "any access to or disclosure of any person's [ ] confidential or personal information, [ ] health information or any other type of nonpublic information", precludes coverage for Four Seasons under the HPIC Policy's Coverages A and B in connection with the Underlying Complaint as it arises directly from Four Seasons' access to and disclosure of its employees' biometric data.  BIPA defines "confidential and sensitive information" as "nonpublic information" and "health information" [740 ILCS 14/10].

21.     Additionally, and in the alternative, the endorsement titled, "Employment-Related Practices Exclusion" contained as part of the HPIC Policy, which excludes coverage for bodily injury, property damage, or personal and advertising injury that arises from "employment-related practices, policies, acts or omissions, such as coercion [ ] [or] evaluation [ ] directed at that person", precludes coverage for Four Seasons in connection with the Underlying Complaint because the entire complaint is premised on Four Seasons' employment policy requiring its employees clock in and out of work using a biometric timekeeping device.  (Exhibits A and B).  Moreover, the Underlying Complaint specifically alleges that that Four Seasons "has required or

coerced employees to comply [with its biometric timekeeping policy] in order to receive a paycheck." (Exhibit A, ¶ 70).

27.     Additionally, and in the alternative, the "Employer's Liability" exclusion contained in the HPIC Policy, which excludes coverage for "bodily injury" to an employee of Four Seasons "arising out of and in the course of [ ] the employment" or "performing duties related to the conduct of the insured's business", precludes coverage for Four Seasons under the HPIC Policy's Coverage A in connection with the Underlying Complaint because the entire complaint is premised on allegations related to Four Seasons' employment policy requiring its employees clock in and out using a biometric timekeeping device.

28.     Additionally, and in the alternative, the "Knowing Violation of Rights of Another" exclusion contained in the HPIC Policy, which excludes coverage for personal and advertising injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury", precludes coverage for Four Seasons under the HPIC Policy's Coverage B in connection with the Underlying Complaint because it alleges and prays for a declaratory finding that Four Seasons' actions in violation of the plaintiff's and purported class' "protected privacy rights" were intentional. (Exhibit A, Prayer for Relief, ¶ E.).

29.     HPIC specifically denies any and all liability under the terms and provisions of the aforementioned policy of insurance and insists that it is not obligated to defend or indemnify any judgment entered in the underlying suit and, by reason of such demand, HPIC is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

30.     An actual controversy exists between HPIC and Four Seasons, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, HARLEYSVILLE PREFERRED INSURANCE COMPANY, respectfully prays that this Honorable Court:

A.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the HPIC Policy;

B.     Declare that HPIC owes no duty to defend Four Seasons under the HPIC Commercial General Liability Coverage policy, No. MPA5387AP, in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of Cook County, Illinois, under case no. 2019 CH 9633; and

C.     And any and all other relief that this Court deems just and equitable under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT (Harleysville Worcester)

31.     Harleysville Worcester Insurance Company (HWIC) repeats and realleges the allegations in Paragraphs 1 through 21 as though fully set forth herein as paragraph 31.

32.     The HWIC Policy defines "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time" (Exhibit C).

33.     The HWIC Policy defines "personal and advertising injury", in relevant part, as an injury arising from an "oral or written publication, in any manner, of material that violates a person's right of privacy."   (Exhibit C).

34.     The endorsement to the HWIC Policy titled, "Recording and Distribution of Material in Violation of Law Exclusion", which excludes coverage for any bodily injury,

property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the [ ] dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information", precludes coverage for Four Seasons under the HWIC Policy's Coverages A and B in connection with the Underlying Complaint because it arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information".  (Exhibits A and C).

35.     Additionally, and in the alternative, the endorsement to the HWIC Policy titled, "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception", excludes coverage any bodily injury, property damage, or  personal and advertising injury that arises from "any access to or disclosure of any person's [ ] confidential or personal information, [ ] health information or any other type of nonpublic information", precludes coverage for Four Seasons under the HWIC Policy's Coverages A and B in connection with the Underlying Complaint as it arises directly from Four Seasons' access to and disclosure of its employees' biometric data.  BIPA defines "confidential and sensitive information" as "nonpublic information" and "health information" [740 ILCS 14/10].

36.     Additionally, and in the alternative, the exclusions titled, "Employment-Related Practices" contained in the HWIC Policy as exclusions under Coverages A and B, exclude coverage for bodily injury, property damage, or personal and advertising injury that arises from "employment-related practices, policies, acts or omissions, such as coercion [ ] [or] evaluation [ ] directed at that person."  These exclusions preclude coverage for Four Seasons under the

HWIC policy in connection with the Underlying Complaint because the entire complaint is premised on Four Seasons' employment policy requiring its employees clock in and out of work using a biometric timekeeping device. (Exhibits A and C). Moreover, the Underlying Complaint specifically alleges that that Four Seasons "has required or coerced employees to comply [with its biometric timekeeping policy] in order to receive a paycheck." (Exhibit A, ¶ 70).

37.     Additionally, and in the alternative, the "Employer's Liability" exclusion contained in Coverage A of the HWIC Policy excludes coverage for "bodily injury" to an employee of Four Seasons "arising out of and in the course of [ ] the employment" or "performing duties related to the conduct of the insured's business", precludes coverage for Four Seasons under the HWIC Policy's Coverage A in connection with the Underlying Complaint because the entire complaint is premised on allegations related to Four Seasons' employment policy requiring its employees clock in and out using a biometric timekeeping device.

38.     HWIC specifically denies any and all liability under the terms and provisions of the aforementioned policy of insurance and insists that it is not obligated to defend or indemnify any judgment entered in the underlying suit and, by reason of such demand, HWIC is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

39.     An actual controversy exists between HWIC and Four Seasons, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, HARLEYSVILLE WORCESTER INSURANCE COMPANY, respectfully prays that this Honorable Court:

A.   Determine and adjudicate the rights and liabilities of the parties hereto with respect to the HWIC Policy;

B.   Declare that HWIC owes no duty to defend Four Seasons under the HWIC Commercial Umbrella Liability Coverage policy, No. CMB38473M, in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of Cook County, Illinois, under case no. 2019 CH 9633; and

C.   And any and all other relief that this Court deems just and equitable under the facts and circumstances.

HARLEYSVILLE PREFERRED INSURANCE COMPANY, and HARLEYSVILLE WORCESTER INSURANCE COMPANY,

By: _____

One of Their Attorneys

Kurt Zitzer
Matthew R. Bloom
MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Our File No.:   56597-00121
kzitzer@meagher.com
mbloom@meagher.com